## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL ADORNO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 14 C 00791 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| | ) | |
| GUY PIERCE,[1] | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

The petitioner, Miguel Adorno, a prisoner at the Pontiac Correctional Center, brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging his criminal conviction in the Circuit Court of Cook County for attempted murder in the first degree while armed with a firearm. The evidence at Adorno's jury trial showed that he shot a gun during a fight at a party and struck a victim in the arm. *Illinois v. Adorno*, 2013 IL App (1st) 110028-U, 2013 WL 3063703, at *1 (Ill. App. Ct. June 14, 2013). Adorno claims that the trial judge violated his due process rights by giving jury instructions that diminished the State's burden of proof. This Court concludes that the Illinois Appellate Court's decision on this issue was contrary to clearly established federal law as set forth by the Supreme Court of the United States, *see* 28 U.S.C. § 2254(d)(1), and that under the resulting *de novo* review, the trial judge improperly instructed the jury on "reasonable doubt" in a manner that created a reasonable likelihood of conviction based on a constitutionally insufficient degree of proof. Therefore, the petition for a writ of habeas corpus is granted.

---

[1] On the Court's own motion, Rick Harrington is terminated as the respondent. Guy Pierce, Warden, Pontiac Correctional Center, is added as Respondent. The Clerk is directed to alter the case caption to *Adorno v. Pierce.*

**A.       Background**

At the start of jury selection at Adorno's trial, the judge gave the venire a number of preliminary instructions which, he explained, were not final or complete. Trial Tr. K-14, ECF No. 13-4. The judge explained that the jury's full instructions would come after all the evidence and final arguments from the lawyers at the end of the case. *Id.* The trial judge's initial instructions included those required by Illinois Supreme Court Rule 431, which provides that a trial judge must ask prospective jurors whether they understand and accept:

> (1) that the defendant is presumed innocent of the charge(s) against him or her;
>
> (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt;
>
> (3) that the defendant is not required to offer any evidence on his or her own behalf; and,
>
> (4) that if a defendant does not testify it cannot be held against him or her.[2]

Ill. S. Ct. R. 431(b); *see also Illinois v. Zehr*, 469 N.E.2d 1062 (Ill. 1984); *Illinois v. Kidd*, 7 N.E.3d 188, 195 (Ill. App. Ct. 2014) (explaining that Rule 431 is a codification of the Supreme Court of Illinois's *Zehr* decision). There is no requirement that the trial judge use specific language when examining the prospective jurors regarding the Rule 431 principles. *Kidd*, 7 N.E.3d at 199 (citations omitted).

The trial judge explained that a defendant is presumed innocent, that the presumption stays with him throughout the trial, and that it is not overcome unless the evidence convinces the jury

---

[2] Rule 431(b)(4) also provides that "no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects." There is no indication in the record that the defendant objected to the Court's inclusion of the instruction prohibiting any adverse inference from a defendant's decision not to testify.

that the defendant is guilty beyond a reasonable doubt. Trial Tr. K-16, ECF No. 13-4. The judge

also explained that the burden of proving the defendant guilty beyond a reasonable doubt is on the

State, and that a defendant is not required to prove his innocence. *Id*. at K16 – K18. The judge then

said the following about reasonable doubt:

> Illinois does not define reasonable doubt, but any of you who may have sat
> on a civil jury there's a preponderance of the evidence, reasonable doubt is the
> highest burden of proof in our country and in our State. Those of you who may have
> sat on civil cases, preponderance of the evidence, if you look at this like a scale, all
> you have to do is tilt it. So the definition of preponderance of the evidence is, it's
> more likely than not that the event occurred.
>
> Again, Illinois does not define reasonable doubt. That's up for you to decide
> in words, but in analogy to the scale thing, you would have to tip it like this, so that
> would be some insight into what proof beyond a reasonable doubt would be.

*Id*. at K17 – K18. Nothing in record explains what the judge did, or referred to, when he told the

jury that "you would have to tip it like this."

At the end of the trial, the judge read the final jury instructions and also provided the jury

with a copy of the instructions. The jury instructions again explained that Adorno was presumed

innocent and that the burden was on the State to prove each element of the charges beyond a

reasonable doubt. Trial Tr. N30-N31, ECF No. 13-4. The final jury instructions made no mention

of the preponderance of the evidence standard or scales, and did not offer any further explanation

of the "beyond a reasonable doubt" standard. Following deliberations, the jury found Adorno

guilty. The trial judge sentenced Adorno to 15 years' imprisonment for attempted murder, and a

mandatory consecutive 15-year sentence for discharging the firearm. *Adorno*, 2013 IL App (1st)

110028-U, 2013 WL 3063703, at *1.

Adorno filed a direct appeal raising three issues, including the argument that the trial judge's attempt to explain the reasonable doubt standard during *voir dire* violated Adorno's due process rights. Appellant Br. 21-26, ECF 13-1. Relying upon *Victor v. Nebraska*, 511 U.S. 1 (1994), Adorno argued that the there was a reasonable likelihood that the jury understood the trial judge's instructions to allow conviction based on proof insufficient to meet the reasonable-doubt standard set forth in *In Re Winship*, 397 U.S. 358 (1970). *See id.*

Although the Illinois Appellate Court agreed that the trial judge's remark on the meaning of reasonable doubt was improper, it rejected Adorno's argument that the improper instruction had deprived him of due process. *Adorno,* 2013 WL 3063703, at *10. The appellate court noted that Adorno did not contemporaneously object or move for a new trial because of the trial judge's definition of reasonable doubt and so held that a plain-error standard should be applied in evaluating the issue. The appellate court concluded that the trial judge's comments on the reasonable-doubt standard did not constitute reversible error. The court explained: "For comments by a trial judge to constitute reversible error, the defendant must show that the remarks were prejudicial and that he was harmed by the comments." *Adorno*, 2013 WL 3063703, at *9 (citing *Illinois v. Heidorn*, 449 N.E.2d 568, 573 (Ill. App. Ct. 1983)). It further stated: "The verdict will not be disturbed unless the judge's remarks constituted a material factor in the conviction or unless prejudice to the defendant appears to be their probable result." *Id.* at *10.

After reproducing the trial judge's offending comments about the meaning of "reasonable doubt," the appellate court noted that "the trial court made subsequent pre- and post-trial admonishments to the jury that its comments were to be disregarded as well as anything except the evidence received in the case." *Id.* at *10. It quoted the judge's final jury instructions on reasonable

4

doubt: "The defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence you are convinced beyond a reasonable doubt that he is guilty. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt and this burden remains on the State throughout the case. The defendant is not required to prove his innocence." *Id.*

The appellate court then concluded the judge's comments during *voir dire* could not "reasonably be construed as inviting the jury to convict defendant based on less than the reasonable doubt standard." *Id.* This conclusion is not further explained; the appellate court did not address the accuracy of the definition given, the comparison to the preponderance standard, or the invocation of scales as a representation of reasonable doubt. "Moreover," the court concluded, "the subsequent remarks cured any possible error" and Adorno had "not shown that he was prejudiced by the comments." *Id.* Finally, the court said: "We conclude, in view of the overwhelming evidence of defendant's guilt, that the trial court's comments while improper and should not have been made, had no effect on the verdict of the jury and constituted harmless error." *Id*. The appellate court therefore affirmed the conviction.

Adorno petitioned for leave to appeal to the Supreme Court of Illinois, which denied his request. *Illinois v. Adorno*, No. 116316, 996 N.E.2d 16 (Ill. Sept. 25, 2013) (Table). Adorno did not file a post-conviction petition in Illinois state court; he proceeded directly to filing his federal petition for a writ of habeas corpus. That petition raises only one claim: that his right of due process was violated by the judge's erroneous definition of reasonable doubt, which created a

reasonable likelihood that the jury convicted on a lesser degree of certainty than required by the Constitution.

**B.     Discussion**

Because the state appellate court adjudicated Adorno's claims on the merits, this Court's review of the habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). This Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d); *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015).

**1.     Forfeiture of Procedural Default Defense**

Before turning to the merits of Adorno's due process claim, the Court notes that the state appellate court, the last state court to rule on merits of Adorno's claim, held that the claim was not properly preserved in the trial court through a contemporaneous objection and timely post-trial motion. *Adorno*, 2013 WL 3063703, at *8. Despite Adorno's failure to properly preserve the issue, the appellate court went on to review the claim for plain error, and also discussed it within the context of ineffective assistance of counsel.[3]   *Id*. at *8-*11.

The state court's finding that the claim was not properly preserved at trial, resulting in plain error review, created a procedural default defense for the respondent. *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010). However, the State failed to assert the procedural default, instead answering

---

[3] Adorno only raises the underlying due process claim, and does not assert an ineffective assistance of counsel claim, in his habeas petition.

the claim on the merits. Procedural default is an affirmative defense that is forfeited if not raised in response to a habeas petition. *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (citation omitted). Therefore this Court will address the merits of Adorno's claim that he was deprived of his right of due process at trial because the jury was erroneously instructed about reasonable doubt.

### 2.    Governing Federal Law

As a threshold issue, this Court agrees with the petitioner that the trial judge's comments on reasonable doubt are appropriately viewed as part of the jury instructions, although they were made to the entire venire and they were preliminary in nature. The context of the remarks compels this conclusion. After welcoming the venire and questioning them on their familiarity with the parties, lawyers, and potential witnesses in the case, the trial judge stated:

> Ladies and gentlemen, I now want to talk to you about some principles of law that apply to all criminal cases. These are not your final nor complete instructions. Those will come after you've heard all of the evidence and the final arguments of the lawyers. When the time for giving instructions come [sic], I will read them to you, and will get them in writing along your [sic] verdict forms for your consideration.

Trial Tr. K14, ECF No. 13-4. The trial judge then went on to explain: "You must follow the law as I give it to you and you may not use your own ideas of what the law should be." The judge then set forth the charges against Adorno, explained that he was presumed to be innocent, and stated that the presumption of innocence could not be overcome unless the jury was convinced beyond a reasonable doubt that he was guilty. *Id*. at K15-K16. The judge continued with the preliminary instructions, including the required Rule 413 statements, which is the context in which the judge gave his explanation of the reasonable-doubt standard.

Inexplicably, however, the Illinois Appellate Court characterized the judge's statements on reasonable doubt not as instructions of law but as general comments by the judge. The appellate court then analyzed the statements not by reference to constitutional standards applicable to attempts to define the meaning of reasonable doubt but to state law applicable to assessing whether stray comments made by a judge during the course of a trial may have prejudiced a party.[4] In defining reasonable doubt for the jury, however, the trial judge was not making spontaneous, offhand comments to the jurors; he was instructing them on the meaning of the most fundamental concept in our criminal jurisprudence. These were not stray remarks; they were instructions of law—even if not "complete" or "final"—provided by the judge so that jurors could understand the questions put to them during voir dire pursuant to Rule 431. Indeed, the trial judge prefaced his remarks by saying that he was giving the prospective jurors "principles of law" to apply. The State does not disagree with this view, and it does not argue that the statements about reasonable doubt should be reviewed simply as a comment by the trial judge. Resp. Br. 9-10, ECF No. 12. It too treats the statements as part of the jury instructions and applies the corresponding line of authority. *See id.*

Adorno, therefore, has properly identified the clearly established federal law that applies to his claim that the instructions on reasonable doubt violated his right of due process. "[T]he Due

---

[4] This standard used by the appellate court applies to numerous categories of comments by the judge during trial; it is not specific to the reasonable-doubt definition or to jury instructions in general. *See, e.g., Illinois v. Anderson*, No. 2015 IL App (1st) 131143-U, 2015 WL 9272728, at *24 (Ill. App. Ct. Dec. 15, 2015); *Illinois v. Burgess*, 40 N.E.3d 284, 320 (Ill. App. Ct. 2015); *Illinois v. Lopez*, 974 N.E.2d 291, 302 (Ill. App. Ct. 2012). The same standard is applied to evaluate whether a judge's comments constitute reversible error in both civil and criminal trials. *See In re Marriage of Cicinelli*, 2015 IL App (2d) 140657-U, 2015 WL 8528005, at *6 (Ill. App. Ct. Dec. 10, 2015); *Nichols v. Agnew*, 2014 IL App (1st) 132901-U, 2014 WL 3906845, at *14 (Ill. App. Ct. Aug. 11, 2014).

Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364; *see also Victor v. Nebraska*, 511 U.S. at 5. A jury must therefore be instructed on the "necessity that the defendant's guilt be proved beyond a reasonable doubt," but "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor*, 511 U.S. at 5 (citing *Jackson v. Virginia*, 443 U.S. 307, 320 n.14 (1979); *Taylor v. Kentucky*, 436 U.S. 478, 485-86 (1978)). According to the Supreme Court, the Constitution neither requires, nor prohibits, the defining of reasonable doubt for the jury.[5] *Victor*, 511 U.S. at 5 (citing *Hopt v. Utah*, 120 U.S. 430, 440-41 (1887)). But where a court attempts to explain the meaning of reasonable doubt, the Constitution requires that "'taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.'" *Victor*, 511 U.S. at 5 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)).

---

[5] Illinois "has long and consistently held that neither the trial court nor counsel should define reasonable doubt for the jury." *People v. Downs*, --- N.E. 3d ----, 2015 IL 117934, ¶ 19, 2015 WL 3791445, at *4 (Ill. June 18, 2015). But the fact that the trial court may have violated this state rule prohibiting a court from defining reasonable doubt is irrelevant to whether Adorno is entitled to habeas relief, because a violation of a state law is a noncognizable claim. *Estelle*, 502 U.S. at 67.

The Seventh Circuit also prohibits trial courts from defining reasonable doubt for the jury. *United States v. Bruce*, 109 F.3d 323, 329 (7th Cir. 1997). However, a violation of a Seventh Circuit precedent does not entitle Adorno to relief under AEDPA, either, because Adorno must demonstrate that the state court addressing his claim violated clearly established precedent as set forth by the Supreme Court of the United States. *Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (per curiam) ("As we have repeatedly emphasized, [] circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court.") (internal quotation marks and citations omitted). And in any event, the Seventh Circuit's rule is based on its supervisory authority, not on a determination that the Constitution precludes all attempts to elucidate the meaning of reasonable doubt.

*Winship* describes the "beyond a reasonable doubt" standard as one requiring "utmost certainty." 397 U.S. at 364. The standard is required in criminal cases because it "impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue." *Id.* (citing Doreen & Rezneck, *In Re Gault and the Future of Juvenile Law*, 1 Family Law Quarterly 4 at 26-27 (1967)). In *Winship,* the Supreme Court expressly rejected the notion that it is a standard comparable to the preponderance-of-the-evidence, which "is susceptible to the misinterpretation that it calls on the trier of fact merely to perform an abstract weighing of the evidence." *Id.* at 367 As noted in McCormick, "[t]he 'reasonable doubt' formula points to what we are really concerned with, the state of the jury's mind, whereas the [preponderance standard] divert[s] attention to the evidence, which is a step removed, being the instrument by which the jury's mind is influenced. [Formulations of the preponderance standard], consequently, are awkward vehicles for expressing the degree of the jury's belief." 2 McCormick On Evid. § 339 (7th ed.).

With respect to review of a trial judge's instructions on reasonable doubt, "[t]he constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor*, 511 U.S. at 6. *See also Tyler v. Cain*, 533 U.S. 656, 658 (2001) ("a jury instruction is unconstitutional if there is a reasonable likelihood that the jury understood the instruction to allow conviction without proof beyond a reasonable doubt"). And because "[i]t is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned," *Winship,* 397 U.S. at 364, an erroneous reasonable-doubt instruction is a structural error mandating the automatic reversal of a criminal conviction. *Sullivan v. Louisiana*, 508 U.S. 275 (1993); *see also United States v. Marcus*, 560 U.S. 258, 263 (2010)

(citing "erroneous reasonable doubt instruction" as part of "limited class" of structural errors).[6]

The Supreme Court has held in no uncertain terms that "the essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings." *Sullivan*, 508 U.S. at 281 (emphasis in original).

### 3. Application to Adorno's Claim

According to the petitioner, the Illinois Appellate Court's decision was "an unreasonable application" of the Supreme Court's decisions in *Victor* and *Cage*, and its application of harmless-error analysis violated *Sullivan*'s holding that an erroneous reasonable doubt instruction is a structural error that cannot be harmless. Adorno takes particular issue with the trial judge's reference to the preponderance-of-the-evidence standard and the analogy drawn by the judge between the government's burden and a balance scale. Adorno contends that the judge's statements were "confusing" and "license[d] jurors to convict on a standard less than the constitutionally required 'near certitude of the guilt of the accused.'" Pet. 7, ECF No. 1 (quoting

---

[6]In *Sullivan*, the trial court gave an erroneous reasonable-doubt instruction identical to the one that the Supreme Court had held to be unconstitutional in *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam). 508 U.S. at 277. In evaluating the challenged instruction, *Cage* inquired whether jurors "could have understood the charge as a whole." 498 U.S. at 329. The Supreme Court later clarified in *Victor* that the "proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor*, 511 U.S. at 6 (quoting *Estelle*, 502 U.S. at 72 & n.4) (emphasis in original). Despite this later clarification of the standard stated in *Cage*, the holding from *Sullivan* that an erroneous reasonable-doubt instruction is structural error remains undisturbed. The Supreme Court has reiterated this principle several times in the two decades following *Sullivan*. *See Marcus*, 560 U.S. at 260 (citing *Sullivan* for proposition that erroneous reasonable doubt instruction results in structural error); *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (per curiam) (same); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (same); *Neder v. United States*, 527 U.S. 1, 8 (1999) (same).

*Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). The jury, Adorno argues, could have interpreted the judge's instruction as allowing conviction based on a "tilt of the scale." *Id*. Furthermore, he maintains, "[b]y comparing reasonable doubt to a scale that has to be tipped, the trial judge made it seem like the defendant must present a defense," and implied that the prosecution and defense began on equal footing. Reply 5, ECF No. 15.

In its very brief counterargument, the State contends that the appellate court's ruling was consistent with *Victor* because it concluded that the trial judge's comments "did not invite the jury to convict based on less than the reasonable doubt standard." Answer 9-10, ECF No. 12. It further contends that the "alternative" conclusion that any error was harmless because of the overwhelming evidence of guilt, even if improper, is "irrelevant to federal habeas inquiry" because the primary conclusion was based on an appropriate application of the holding in *Victor*. *Id*. at 11.

The State's position is untenable. The appellate court failed to apply the due-process inquiry set forth in *Victor* and *Sullivan* and, indeed, did not discuss at all whether the trial judge's definition of reasonable doubt comports with the *Winship* standard. The petitioner characterizes these deficiencies as a misapplication of federal law, but that description understates the problem in the appellate court's analysis. This is not a case in which the state court identified but misapplied the appropriate legal principles; this is a case in which the state court applied the wrong law altogether. It therefore contradicts clearly established federal law. As the Supreme Court has explained: "A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A decision is 'contrary to' federal law if the state court applied an incorrect rule—*i.e.,* one that 'contradicts the governing law'." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir.

2015). Put more simply, a "state court's decision is 'contrary to' federal law if it employs the wrong legal standard established by the Supreme Court." *Ford v. Wilson*, 747 F.3d 944, 952-53 (7th Cir. 2014). *See also Early v. Packer,* 537 U.S. 3, 8 (2002) (*per curiam*) (AEDPA deference required "so long as ***neither*** the reasoning nor the result" of the state-court decision contradicts Supreme Court precedent) (emphasis added); *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) (*Early* "indicat[es] that § 2254 does not preclude relief if either the reasoning [or] the result of the state-court decision contradicts [Supreme Court precedent]") (internal quotation marks omitted).

That is precisely what occurred here. The state appellate court did not identify and rely upon the appropriate standard for reviewing the trial judge's instructions about reasonable doubt; it applied a framework applicable to an entirely different problem. Rather than review the judge's statements about reasonable doubt as the preliminary instructions of law they plainly were, the state appellate court mischaracterized them as the equivalent of stray comments by the judge that the jurors were later instructed to disregard. No reasonable juror would have understood that, in subsequently instructing the jurors that "[n]either by these instructions nor by any ruling or remark which I have made do I mean that to indicate any opinion as to the facts or as to what your verdict should be," [ECF No. 13-4 at N 28], the judge was instructing the jurors to disregard his earlier instructions about important "principles of law" governing the criminal trial, including his instructions on the meaning of reasonable doubt. Adorno's claim, as presented to the state appellate court and in his habeas petition, is not whether the judge said something that suggested to the jury that he had an opinion on the merits of the case; the issue he raises is whether the judge explained the applicable standard of proof to the jurors in a manner that made it reasonably likely

that they understood that standard to be less demanding than required by the Supreme Court. The state appellate court did not apply the legal framework necessary to address that issue.

The State maintains that, notwithstanding the appellate court's mischaracterization of the trial judge's statements about reasonable doubt as comments to be disregarded rather than instructions the jurors were required to follow, the appellate court applied the correct standard because it included a single sentence stating: "We do not believe that the court's comments during *voir dire* could reasonably be construed as inviting the jury to convict defendant based on less than the reasonable doubt standard." *Adorno*, 2013 IL App (1st) 110028-U, 2013 WL 3063703, at *10. Although this language nods toward the inquiry required by *Victor*, which Adorno used in framing the issue in appellate brief, the appellate court's analysis shows that despite using some of the right words, it employed the wrong standard in reaching its conclusion. *See McManus,* 779 F.3d at 659 (reversing denial of habeas relief where, despite reciting the correct standard, the state court "never actually applied it").[7]

Here, the appellate court's conclusion was incontrovertibly based on its mischaracterization of the judge's instructions about reasonable doubt as comments that the jury had been told to disregard, not on an evaluation of whether the import of the words suggested a standard that was something less than the "utmost certainty" required by *Winship*. Immediately after quoting the trial judge's comments about reasonable doubt, the appellate court stated, without

---

[7] Notably, although Adorno's brief before the state appellate court identified the controlling Supreme Court cases of *Victor v. Nebraska*, 511 U.S. 1 (1994), *Sullivan v. Louisiana*, 508 U.S. 275 (1993), and *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam), the appellate court addressed none of these precedents. That does not mean that the state court's determination *necessarily* contradicts those controlling Supreme Court precedents, but here it underscores the state court's application of the wrong legal inquiry.

further analysis, that "the trial court made subsequent pre- and post-trial admonishments to the jury that its comments were to be disregarded as well as anything except the evidence received in the case." [¶ 53]. At no point did the appellate court consider whether the jury instructions as whole correctly conveyed the concept of reasonable doubt to the jury; *see Victor*, 511 U.S. at 5. Indeed, having dismissed the trial judge's comments as stray remarks, the appellate court never examined the correctness of trial judge's "insight into" reasonable doubt at all. Moreover, it never inquired whether it was *reasonably likely* "that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard" of proof beyond a reasonable doubt. *See Victor*, 511 U.S. at 6.

Additional evidence of the appellate court's failure to apply the controlling Supreme Court standard is its conclusion that "in view of the overwhelming evidence of defendant's guilt, that the trial court's comments, while improper and should not have been made [sic], had no effect on the verdict of the jury and constituted harmless error." *Adorno*, 2013 WL 3063703, at *10. Harmless error has no place in the analysis under the controlling standard because the Supreme Court has held that an erroneous reasonable doubt instruction results in structural error. *Sullivan*, 508 U.S. at 281. *See also, e.g., Morris v. Cain*, 186 F.3d 581, 585 (5th Cir. 1999) (the state habeas court's legal determination that misdescription of reasonable doubt standard in jury instructions was harmless "was contrary to clearly established federal law as determined by the United States Supreme Court in *Sullivan*"). Structural errors "'defy analysis by 'harmless error' standards." *Neder*, 527 U.S. at 7 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)). Even the State concedes that the appellate court was wrong to engage in harmless-error review, although it says that this error is of

no consequence because it was simply an "alternative" conclusion to the holding that the judge's remark was not a violation of due process.

Not so. By simply inquiring whether Adorno had been prejudiced by the trial judge's explanation of reasonable doubt, the state appellate court did not identify and apply the correct line of Supreme Court precedent to a statement that was part of the jury instructions on reasonable doubt. By analyzing the statement as an "improper remark" and not an instruction, the state appellate court applied a lesser degree of scrutiny than is required and failed to answer (or even ask) whether the instructions correctly conveyed the concept of reasonable doubt. In employing a prejudice analysis to determine whether an error had been made in the first place, the state appellate court here made a mistake similar to that which prompted the Seventh Circuit to affirm the grant of habeas relief in *Harrison v. McBride*, 428 F.3d 652 (7th Cir. 2005). In *Harrison*, the petitioner asserted a due process claim of judicial bias—another species of structural error. Observing that the state supreme court had reviewed the bias claim under an abuse of discretion standard, the Seventh Circuit held that the state court had reviewed the claim too narrowly. *Id*. at 667 (concluding that the due process guarantee of an impartial judge "indisputably is much broader" than the protection that would be afforded by an abuse of discretion standard). As a result, conduct that violated the clearly established federal standard passed muster under the more lenient state court standard of review. *See also McManus*, 779 F.3d at 659 ("By subjecting a constitutionally inadequate trial-court decision to deferential review, the Indiana Supreme Court did not adequately vindicate the federal due-process interests at stake."). As in *Harrison* and

*McManus*, here the state court's erroneous resort to a more permissive standard of review[8] contradicts the Supreme Court's clear statement that the right is so fundamental to due process that any erroneous denial of the right requires reversal, not just those that as to which actual prejudice can be proved. Accordingly, the state court decision is contrary to clearly established federal law as determined by the Supreme Court of the United States.

### 4. Adorno's Entitlement to Relief

Although the state court decision is contrary to the clearly established federal law from the Supreme Court, satisfying a necessary condition for habeas relief, *see* § 2254(d), Adorno is not automatically entitled to a writ of habeas corpus. "Where a district court properly finds that a state court's decision was contrary to or involved an unreasonable application of clearly established federal law, it must still answer the question underlying § 2254(a): whether a petitioner is actually 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Mosley v. Atchison*, 689 F.3d 838, 842 (7th Cir. 2012). "Where the state court's decision is 'contrary to' federal law, that decision is not entitled to the usual AEDPA deference and is therefore reviewed *de novo* with the reviewing court applying the correct legal standard." *Id.* at 844 (7th Cir. 2012). *See also, e.g., Lafler*, 132 S. Ct. at 1390-91 (after determination that state court decision was contrary to *Strickland v. Washington* because the state court applied the wrong standard, the Supreme Court engaged in its own *Strickland* analysis to determine if the prisoner was entitled to habeas corpus relief). And because this court's review is *de novo,* relevant federal law is not confined to the contours limned by Supreme Court precedent.

---

[8] Although at the outset of its discussion the Illinois Appellate Court stated that it would review only for plain error, it later set forth and applied the simple "prejudice" standard applicable to all judicial comments, and then proceeded to a harmless-error analysis.

Although it may be possible to elucidate the meaning of reasonable doubt in a manner that comports with due process,[9] the trial judge's attempt in this case confirms the truth of the Seventh Circuit's declaration that "an attempt to define reasonable doubt presents a risk without any real benefit." *United States v. Hall*, 854 F.2d 1036, 1039 (7th Cir. 1988). *See also United States v. Shaffner*, 524 F.2d 1021, 1023 (7th Cir. 1975) ("It is our opinion that any use of an instruction defining reasonable doubt presents a situation equivalent to playing with fire."). Applying the *Victor* standard *de novo*, this Court concludes that "taken as a whole," the jury instructions did not "correctly convey the concept of reasonable doubt to the jury,'" and, further, that there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the standard of "beyond a reasonable doubt." *See Victor*, 511 U.S. at 5-6.

To begin, the trial judge described reasonable doubt by comparison to the preponderance-of-the-evidence standard without adequately distinguishing them and without making clear the much greater level of certainty required to find guilt beyond a reasonable doubt. Indeed, although he told the jurors the definition of "preponderance of the evidence" ("more likely

---

[9] As previously noted, the Constitution is agnostic when it comes to defining reasonable doubt for a jury, neither prohibiting nor requiring the attempt. *Victor*, 511 U.S. at 5. The decision is left to federal lower courts and state courts under their supervisory power. *Id*. at 17. Both Illinois and the Seventh Circuit prohibit trial courts from defining the reasonable doubt standard for the jury. See *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988); *Bruce*, 109 F.3d at 329; *Downs*, 2015 WL 3791445, at *4. That fact does not, however, entitle Adorno to relief. A violation of the Illinois rule is not cognizable under § 2254. *Estelle*, 502 U.S. at 67. As for the Seventh Circuit's rule, like that of the Supreme Court, is premised on supervisory authority rather than a constitutional command, and so does not itself provide a basis for habeas relief. *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (instructing that a prisoner has no right to habeas corpus relief when a state court violates a rule established by a federal court when that rule is not mandated by the Constitution); *Vargas v. Keane*, 86 F.3d 1273, 1280 (2d Cir. 1996) (recognizing that rule prohibiting trial courts from straying from pattern jury instructions on reasonable doubt is based on court's supervisory authority, not constitutional, and cannot be basis for habeas corpus relief).

than not"), the trial judge never actually told the jurors that "the preponderance of the evidence" constitutes a "burden of proof," much less that it is a lesser burden of proof than "reasonable doubt," or one that does not apply in criminal cases. In this regard, the state appellate court's instruction falls short of even the trial court's problematic attempt to define reasonable doubt in *Lanigan v. Maloney*, 853 F.2d 40, 47 (1st Cir. 1988), where in affirming a grant of habeas relief, the First Circuit criticized (among other aspects of the trial court's attempt to define reasonable doubt) its "confused and confusing" discussion of the preponderance standard because "[n]owhere did the instruction actually contrast the level of proof required for the government to meet its burden in a criminal case with the level of proof needed by a civil plaintiff, except to say that, in the criminal case, the standard was proof beyond a reasonable doubt rather than a preponderance of the evidence."

Further, as the Supreme Court noted in *Winship*, the preponderance of the evidence standard "is susceptible to the misinterpretation that it calls on the trier of fact merely to perform an abstract weighing of the evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of the proposition asserted." 397 U.S. at 367-68. This problem is exacerbated where the trial judge invokes a metaphorical scale that further suggests that applying the reasonable-doubt standard is a quantitative rather than qualitative exercise. Federal courts have consistently condemned efforts to define reasonable doubt by resort to scales and other analogies based on assessments of the quantity, rather than the quality, of the evidence presented. *See, e.g.*, *Reed v. Roe*, 100 F.3d 964 (9th Cir. 1996) (government conceded error where the trial court described reasonable doubt by reference to a numerical scale); *United States v. Pungitore*, 910 F.2d 1084, 1145 (3d Cir. 1990)

(use of scale analogy to illustrate proof beyond a reasonable doubt constituted an improper attempt to quantify reasonable doubt and citing cases disapproving of the practice). *Cf. United States v. Hall*, 854 F.2d 1036, 1044 (7th Cir. 1988) (Posner, J., concurring) ("It is one thing to tell jurors to set aside unreasonable doubts, another to tell them to determine whether the probability that the defendant is guilty is more than 75, or 95, or 99 percent.").[10] Here, the **only** comparison that the trial judge made between the two standards of proof was by means of a scale analogy, so there is little reason to think that the jurors were left with any other impression but that proof beyond a reasonable doubt requires a greater quantum of evidence than does proof by a preponderance of the evidence. Nothing the judge said told the jurors that it is the degree of certainty, rather than the

---

[10] Some courts have found that referring to scales and the preponderance standard in the context of reasonable doubt did not violate the due-process rights of the accused. *See United States v. Romero*, 32 F.3d 641, 650-52 (1st Cir. 1994) (finding no constitutional violation when jury was instructed on differences between beyond a reasonable doubt from preponderance of the evidence by analogizing to a scale, and how evidence must move the scale more towards the government side under the reasonable doubt standard to show the government has a heavier burden); *Little v. Murphy*, 62 F. Supp. 2d 262, 269 (D. Mass. 1999) (rejecting habeas petitioner's argument that reasonable doubt instructions improperly included reference to preponderance of evidence and scales). However, the totality of the jury instructions in these cases went much further to clarify the degree of proof needed to meet the standard. In *Romero*, the trial court expressly stated that the jury should "*disregard* the particular notion of preponderance" and that the government had a "heavier burden" where the "scale must tip more to the government's side"; the court later explained that the jury needed to be "firmly convinced" of the defendants' guilt. 32 F.3d at 651. Moreover, the First Circuit agreed that "the use of the scale analogy has the potential for misleading the jury into applying a diluted burden of proof" but held, considering all the instructions as a whole, that there was not a due process violation. *United States v. Romero*, 32 F.3d 641, 652 (1st Cir. 1994). In *Little*, although the court referred to the preponderance standard (and said, crucially, "That's not enough"), the jury instructions also included this statement: "A fact is proved beyond a reasonable doubt when it is proved to a moral certainty, when it is proved to that degree of certainty that satisfies your conscience and your judgment as reasonable people and leaves in your mind a well settled conviction of guilt. That's what we do mean by reasonable doubt." *Little v. Murphy*, 62 F. Supp. 2d 262, 269 (D. Mass. 1999). The judge's only reference to "scales" was to say that if the evidence seemed equally consistent with guilt as with innocence, then the defendant must be acquitted. *Id.* at 269.

quantum of evidence, that distinguishes the two standards, or that "utmost certainty" or some equivalent is required by the reasonable doubt standard.

Clearly, there is a gap in the trial record to the extent that the judge appears to have used a physical gesture to illustrate his comment that reasonable doubt required a tilting of the scales "like this." Neither the petitioner nor the respondent attempts to explain how much tilting the judge pantomimed (assuming that that is what he did). But this only serves to highlight how inapt the scale analogy is to explain reasonable doubt; no matter where the trial judge put his hands to illustrate the respective positions of the two sides of a scale, it is reasonably likely that the jurors would have been left with the impression that their verdict should be determined by quantitative, rather than qualitative, factors. If the trial judge's demonstration suggested less than a complete vertical tilt to the scale (*e.g.,* with hands at the two o'clock and eight o'clock positions), it would reasonably suggest that some numerical ratio applies in comparing the evidence presented by the government to that adduced by the defendant. And because the defendant has no obligation to present any evidence at all, a demonstration that reflected a full, completely vertical tilt to the scale would be even more problematic; any scale with significant weight on only one side will tilt decisively to that side, a fact that makes it reasonably likely that a jury would understand the scale analogy to require conviction any time a defendant presented little or no evidence.

In a criminal trial the defendant is presumed innocent and has no burden of production or proof. The reasonable doubt standard is not a relative measurement comparing one side's evidentiary presentation to the other's, but that is the message an analogy to a balance scale provides to a jury—or at least there is a reasonable likelihood that jurors may understand it that way. Jurors may have reasonable doubts notwithstanding a one-sided evidentiary presentation; a

doubt is "reasonable" if it "arises from the evidence **or lack of evidence**." *Johnson v. Louisiana*, 406 U.S. 356, 360 (1972) (citation omitted) (emphasis added). The reasonable-doubt standard requires a jury to attain "a subjective state of certitude of the facts in issue." *Winship*, 397 U.S. at 364. As Adorno argues, the jury is not tasked with simply weighing evidence, but with determining whether the government's evidence persuades it to high degree of certainty that the defendant is guilty. Nothing in the trial judge's attempt to define the standard accurately conveyed this degree of certainty contemplated by *Winship*. And because he never told the jury *what* was to be weighed on the scales, he invited the incorrect, but reasonable, conclusion that the jury's task was to weigh the prosecution's case against the defendant's, or the evidence of guilt versus evidence of innocence, rather than to determine, in light of all of the evidence presented, whether there was near-certainty about the defendant's guilt. Given the quantum of evidence adduced against Adorno, as recounted by the Illinois Appellate Court, the scales almost certainly would have tipped in favor of the State, and might have tipped dramatically. But that is not what the Supreme Court contemplated in *Winship*. The jurors must be convinced of the defendant's guilt as an absolute, not a relative, matter.

That the judge stated several times, in both the preliminary and final jury instructions, that the defendant is presumed innocent, that the burden of proof is with the government, and that only proof beyond a reasonable doubt can sustain a conviction does not mean that the instructions as whole accurately conveyed what "reasonable doubt" is. Those instructions—no matter how many times they were given—could do nothing to cure the misimpression that the judge's prior statements created because they offered no further elucidation of the meaning of the standard. The **only** time the trial judge gave the jurors "some insight into" the term was during jury selection,

with the incomplete and faulty comparison to the preponderance standard and the simulation of a scale. No attempt was ever made to retract or correct the incomplete comparison to the preponderance standard.[11] The jurors, then, likely applied that flawed definition each time the term was used, compounding, rather than mitigating, the risk that they understood the instructions to allow conviction based on insufficient proof.

The trial judge further compounded the risk that the jurors would misconstrue the level of certainty required by the reasonable doubt standard by expressly telling them that the state "doesn't define reasonable doubt" and "that's up for you to decide in words." Trial Tr. K-16, ECF No. 13-4. To say that reasonable doubt should not be defined for the jury is not, of course, to say

---

[11]  The trial court's challenged instruction bears some resemblance to the Federal Judicial Center pattern criminal jury instructions that were in effect at the time of the *Victor* decision. Justice Ginsburg's concurrence in *Victor* suggested that the Federal Judicial Center's instructions are "clear, straightforward, and accurate." *Victor*, 511 U.S. at 26 (Ginsburg, J., concurring). The relevant instruction provided:

> [T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Federal Judicial Center, Pattern Criminal Jury Instruction 21. Any resemblance, however, is overborne by the significant differences in the instructions. Most notably, here the trial court failed to explain that the government's proof must be "more powerful" than what is required under the preponderance standard, and it did not explain that reasonable doubt requires the jury to be "firmly convinced" or certain. The FJC instruction does not analogize application of the reasonable doubt standard to the comparative weighing of evidence on a scale.

that the term lacks a fixed meaning and may be interpreted to mean whatever the jurors believe it should mean,[12] but that is the import of the trial judge's statements. Moreover, that jurors are to apply "reasonable doubt" without further definition does not mean that they should be ***instructed*** that the meaning is "up for [them] to decide," any more than the fact that jurors have the power to nullify the law means that they should be instructed about that power. *See, e.g., United States v. Davis*, 724 F.3d 949, 954-55 (7th Cir. 2013) ("Although jury nullification is a natural and at times desirable aberration under our system, it is not to be positively sanctioned by instructions") (internal quotation marks omitted). Nevertheless, here the trial judge issued an express invitation to the jurors to define the term as they saw fit, with the benefit of his own problematic "insight." The judge's implication that the term has no fixed meaning—that the jury could "decide" on a meaning rather than to simply give the term its plain and ordinary meaning—is a further reason that the jury instructions did not, as a whole, accurately convey what "reasonable doubt" is, and in combination with the judge's own faulty explanation, created a substantial risk that the jurors would apply a standard insufficient to satisfy due process.

To recap: The trial judge invoked the preponderance-of-the-evidence standard but failed to distinguish it from proof beyond a reasonable doubt. Indeed, the trial judge never said outright that

---

[12] Indeed, prohibitions on defining reasonable doubt for jurors are based on the principle that "[j]urors know what is 'reasonable' and are quite familiar with the meaning of 'doubt.'" *Glass*, 846 F.2d at 387. That is, the words are to be given their plain and ordinary meaning. Telling judges not to "muddy the waters" with further explanation, *see id.*, is quite different from allowing judges to suggest that the term lacks a fixed meaning. Rather than being open to interpretation, as the trial judge suggested here, "the phrase 'reasonable doubt' is well understood and certainly is neither confusing nor ambiguous when used, and needs no further explanation or explication." *United States v. Hernandez*, 39 F. App'x 365, 371 (7th Cir. 2002); *see United States v. Langer*, 962 F.2d 592, 600 (7th Cir. 1992) ("reasonable doubt" is "self-explanatory and is its own best definition") (quoting Seventh Circuit Pattern Criminal Jury Instruction 2.07).

the preponderance standard does not apply in criminal cases. If he intended to use the preponderance standard merely as a comparative baseline, he did not finish the thought. The judge told the jury to use a scale analogy without saying what was to be weighed on that scale. He said nothing to advise the jury that "beyond a reasonable doubt" is a qualitative standard based on the degree of certainty the evidence engenders rather than a quantitative comparison of the evidence presented by each side. Instead, he affirmatively invited the jurors to supply their own definition of the term. Although not every attempt to define "reasonable doubt" will violate the due-process clause, in this case, these statements by the trial judge created a reasonable likelihood that the jury would apply a lesser standard of certainty than the Constitution demands. Because of this structural error, Adorno was denied due process.

The petition for a writ of habeas corpus is therefore granted. Judgment will be issued in the petitioner's favor. The respondent is ordered to release Adorno from custody unless the State of Illinois files in this Court a timely notice of appeal from the Judgment or written notice within 30 days of the entry of the Judgment of its intent to retry Adorno and confirmation that counsel has been appointed for him. Execution of the writ is stayed in the interim. Nothing in this opinion, however, precludes the State from retrying the petitioner whether or not he is released pursuant to the Judgment in this matter.

Date: April 29, 2016

John J. Tharp, Jr.
United States District Judge